**RECEIVED**

JUL 3 0 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HENRY L. HYMES | CIVIL ACTION NO. 10-1167 |
| VERSUS | JUDGE TRIMBLE |
| CITY OF NATCHITOCHES, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed jointly by defendants the City of Natchitoches ("City"), Mayor Wayne McCullen ("Mayor"), Bryan Wimberly ("Wimberly") and Edd Lee ("Lee").[1] For the reasons expressed herein, the court finds that defendants' motion should be GRANTED in all respects and, accordingly, finds that plaintiff's claims should be DISMISSED with prejudice in their entirety.

## I. BACKGROUND

Plaintiff Henry L. Hymes ("Plaintiff" or "Hymes") is a former City employee who brings the above-captioned suit against defendants as a result of the termination of his employment and alleged events leading thereto. Plaintiff was hired by the City in April of 1972 and held various positions during his employment. In 2004 and 2005, Hymes was employed by the City's utility department as Power Plant Chief Operator.[2] During this period of time, plaintiff's supervisor, Power Plant Superintendant Cleve Possoit ("Possoit") was absent from work on extended sick leave and ultimately retired from his employment in April 2005.[3]

---

[1] R. 43.
[2] R. 50-1 at p. 3.
[3] R. 43-1 at p. 1; R. 50-1 at p. 3.

1

Following Possoit's retirement, plaintiff sought to be promoted to Superintendant, but was refused such promotion.[4]  On or about September 18, 2008, plaintiff assisted in a power plant capacity test, during which several boilers malfunctioned.[5]  Shortly after the capacity test, the Mayor transferred plaintiff from his position at the power plant to a new position as the City's Utility Department Customer Service Representative.[6]

Plaintiff took sick leave from work and claims he reported his absence to Bob Hayward ("Hayward"), the Supervisor of Maintenance and Timekeeper.  Plaintiff was terminated on October 6, 2008 by letter which advised that the reason for his termination was his absence from work for a period exceeding three days, beginning on September 30, 2008, without notice to his supervisor.[7]

Plaintiff filed suit against defendants in the Tenth Judicial District Court for the Parish of Natchitoches, State of Louisiana on or about September 25, 2009.[8]  Plaintiff amended his original petition, adding federal claims under 42 U.S.C. §§ 1981 and 1983.[9]  Defendants removed the suit to this court on July 21, 2010 based on the addition of federal claims.[10]

Defendants filed a motion to dismiss on July 26, 2010.[11]  In response, plaintiff sought and was granted leave to amend his complaint.[12]  Defendants then vacated their prior motion to dismiss and filed a revised motion to dismiss.[13]  The revised motion was referred to the magistrate judge for report and recommendation, which was adopted by this court.[14]  On the

---

[4] R. 43-1 at p. 1-2; R. 50-1 at pp. 3-4.
[5] R. 43-1 at p. 10.
[6] Id.
[7] Letter of termination dated October 6, 2008 [R. 43-6 at p. 13-14].
[8] R. 1-2, 1-3.
[9] R. 1-3.
[10] R. 1.
[11] R. 3.
[12] R. 12, 21.
[13] R. 23, 24.
[14] R. 30, 34.

basis of such adoption, plaintiff's claims against all defendants under La. R.S. 42:1169 were dismissed because the cited statute does not provide a private right of action.[15]   Additionally, plaintiff's claims against the Mayor in his individual capacity under 42 U.S.C. § 1981 were dismissed on the basis that § 1981 does not impose personal liability upon elected officials for discrimination in the context of government employment contracts.[16]

Defendants' instant motion seeks dismissal of all remaining claims by plaintiff in this matter.  The arguments of the parties are addressed below.

## II.   APPLICABLE STANDARD

This court will grant summary judgment when the moving party shows the absence of a dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.[17]   A disputed fact is "material" when the resolution of the dispute as to that fact will affect the outcome of the suit according to governing law.[18]

The movant bears the burden of demonstrating the absence of a dispute as to any material fact by

> citing to particular parts of materials in the record, including deposition, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...[19]

Once the movant has carried its initial burden under Rule 56, the non-moving party must respond by going beyond the allegations of the pleadings and identify specific facts which, when taken as true for the purposes of the motion, would enable a rational fact-finder to render

---

[15] R. 34.
[16] Id.
[17] Fed. R. Civ. P. 56(a).
[18] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Daniels v. City of Arlington, 246 F.3d 500 (5th Cir. 2001); Hamilton v. Segue Software Inc., 232 F.3d 473 (5th Cir. 2000).
[19] Fed. R. Civ. P. 56(c)(1)(A).

judgment in favor of the non-moving party.[20]   Factual allegations unsupported by citation to specific evidence in the record are insufficient to meet the burdens imposed on either party in a summary judgment proceeding.[21]

Evidence offered in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[22]   The court will construe all properly pled and supported facts in the light most favorable to the non-moving party.[23]

## III.   ANALYSIS

Plaintiff's suit alleges discriminatory failure to promote, transfer and termination claims under 42 U.S.C. §§ 1981 and 1983.   Section 1981 provides, in part, that "[a]ll persons within…the United States shall have the same right in every State and Territory to make and enforce contracts…"[24]   The statute further defines the phrase "make and enforce contracts" to encompass "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."[25]

Section 1983 creates a private cause of action for violations of federal rights and does not, itself, convey federal rights.[26]   Section 1983 and Title VII are "parallel causes of action"

---

[20] Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986); Tubacex, Inc. v. M/V Risan, 45 F.3d 951 (5th Cir. 1995); Wallace v. Texas Tech Univ., 19 F.3d 1527, 1537 (5th Cir. 1994).

[21] Scott v. Harris, 550 U.S. 372 (2007); Anderson, 477 U.S. at 250; Matsushida Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

[22] Fed. R. Civ. P. 56(c)(2).

[23] Lujan v. National Wildlife Federation, 497 U.S. 871 (1990); Adickes v. S.H. Kress & Co., 390 U.S. 144 (1970); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994); Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc., 699 F.2d 1026 (5th Cir. 1982).

[24] 42 U.S.C. § 1981(a).

[25] 42 U.S.C. § 1981(b).

[26] Albright v. Oliver, 510 U.S. 266 (1994); City of St. Louis v. Praprotnik, 485 U.S. 112 (1988); Energy Management Corp. v. City of Shreveport, 467 F.3d 471, 481 (5th Cir. 2006) citing Findeisen v. N.E. Indep. Sch. Dist., 749 F.2d 234, 236-37 (5th Cir. 1984); Bauer v. Texas, 341 F.3d 352 (5th Cir. 2003).

and, therefore, discrimination claims under Section 1983 are subject to the same analysis as Title VII discrimination claims.[27]

Intentional discrimination claims under both Title VII and Section 1983 are analyzed using the familiar burden-shifting framework of McDonnell Douglas v. Green.[28]  Under the McDonnell Douglas framework, plaintiff must first demonstrate a prima facie case of discrimination, the elements of which are tailored to the specific nature of the discriminatory practice alleged.[29]  Once the plaintiff establishes the requisite prima facie case, the burden shifts to the defendant to rebut this presumption by offering a legitimate, non-discriminatory reason for the alleged adverse action.[30]  The burden of the defendant at this stage is one of production, not persuasion.   The burden of persuasion remains, at all times, with the plaintiff alleging discrimination.[31]

Once a defendant articulates some legitimate, non-discriminatory reason for the alleged discrimination, the burden again shifts to the plaintiff to demonstrate that defendant's explanation is merely pretext for some impermissible discriminatory motive.[32]

Evidence offered in support of a discrimination claim may be direct or circumstantial. Direct evidence is that which needs no inference in order to demonstrate discriminatory animus. Circumstantial evidence, on the other hand, requires an inference to be made in order to demonstrate an impermissible animus.[33]  If an employee offers direct evidence of discrimination,

---

[27] Cervantes v. Bexar Cty. Civ. Serv. Comm'n., 99 F.3d 730 (5th Cir. 1996); Wallace v. Texas Tech Univ., 80 F.3d 1042 (5th Cir. 1996).

[28] 411 U.S. 792 (1973); Walsdorf v. Board of Com'rs for the East Jefferson Levee Dist., 857 F.2d 1047 (5th Cir. 1988);

[29] Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004) citing McDonnell Douglas, 411 U.S. at 802 n. 13.

[30] Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) citing McDonnell Douglas, 411 U.S. at 802.

[31] Id. at 253; Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005).

[32] Id.

[33] Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Jones v. Robinson Property Group, LP, 427 F.3d 987 (5th Cir. 2005); Brown v. East Mississippi Elec. Power Ass'n., 989 F.2d 858 (5th Cir. 1993).

the burden shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made regardless of the impermissible discrimination.[34]

Thus, a court will first inquire whether or not a plaintiff's claim is supported by direct or circumstantial evidence, as this distinction controls the analytical framework under which the court must proceed.

### 1.    Plaintiff's official capacity claims against the Mayor, Wimberly and Lee

Defendants assert that plaintiff's claims under 42 U.S.C. § 1981 against the Mayor, Wimberly and Lee should be dismissed as redundant to plaintiff's claims against the City. Plaintiff concedes that his claims against Wimberly and Lee in their official capacities are redundant to claims against the City and should be dismissed, but argues that his official capacity claim against the Mayor should not be dismissed as redundant because the Mayor is an elected official who is a "public entity unto himself."[35]

Plaintiff cites no authority whatsoever for his argument against dismissal of official capacity claims against the Mayor in this case. This court's own research discloses no authority which contradicts the precept that official capacity claims against municipal officials are, in actuality, simply another way of alleging municipal liability, since such claims actually implicate the official's office.[36]

Accordingly, the court finds that plaintiff's official capacity claims against the Mayor, Wimberly and Lee are redundant to plaintiff's claims against the City as a co-defendant and should be dismissed with prejudice.

### 2.    Prescription of plaintiff's failure to promote claims under 42 U.S.C. § 1981

---

[34] Id.

[35] R. 50-1 at p. 6.

[36] Hafer v. Melo, 502 U.S. 21 (1991); Kentucky v. Graham, 473 U.S. 159, 165 (1985); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978).

6

Plaintiff's suit alleges that defendants denied him promotion to Superintendent because of his race, which constituted a violation of Section 1981.  Section 1981 provides, in part, that "[a]ll persons within…the United States shall have the same right in every State and Territory to make and enforce contracts…"[37]  The statute further defines the phrase "make and enforce contracts" to encompass "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."[38]

Causes of action arising under federal statutes enacted after December 1, 1990 are subject to a four-year statute of limitations.[39]  Causes of action arising under federal statutes enacted prior to December 1, 1990 are subject to "the most appropriate or analogous state statute of limitations[.]"

Prior to 1991, discrimination occurring after the confection of the contract was not actionable under Section 1981, as explained by the United States Supreme Court in Patterson v. McLean Credit Union.[40]  Thus, if plaintiff's claims for failure to promote arose under the pre-1991 version of Section 1981, such claims are subject to a one-year liberative prescriptive period.[41]  On the other hand, if plaintiff's causes of action are created only by Congress' 1991 amendments to the statute, such claims are subject to a four-year statute of limitations pursuant to 28 U.S.C. § 1658.

Defendants allege that plaintiff's failure to promote claims were available under the pre-amendment version of the statute because they represent discrimination in the formation of a new employment contract.  In Patterson, the Supreme Court specified that a promotion comprises a new contract when it "rises to the level of an opportunity for a new and distinct relation between

---

[37] 42 U.S.C. § 1981(a).
[38] 42 U.S.C. § 1981(b).
[39] 28 U.S.C. § 1658.
[40] 491 U.S. 164 (1989).
[41] LSA – R.S. 23:303(D).

the employee and the employer..."[42]   In order to determine whether or not the changes encompassed in the promotion at issue amount to a new contract, the court must consider the employee's current duties, salary and benefits and compare these factors with the benefits offered under the new position.[43]

In Police Association of New Orleans Through Cannatella v. City of New Orleans,[44] the Fifth Circuit Court of Appeals considered this issue in the context of a promotion from Police Officer to Police Sergeant.  The court found that heightened responsibility, higher pay and the chance for further promotion made promotion to Sergeant the sort of promotion which triggered the protections of Section 1981 prior to the 1991 amendments.

In the instant case, the parties agree that the job of Superintendent entailed increased responsibility on a permanent basis, as well as higher pay.[45]  Based on these undisputed factual allegations, the court finds that a promotion to Superintendent is the sort of employment action which, when denied on the basis of race as alleged by plaintiff, triggers the protection of Section 1981 prior to Congress' 1991 amendments.  Thus, plaintiff's claims for failure to promote in this case are subject to a one-year liberative prescriptive period.

Plaintiff's complaint alleges that he sought promotion to Superintendent "both prior and subsequent to July, 2007[.]"[46]  Plaintiff argues against the prescription of his failure to promote claims on the basis that such denials constitute a continuing violation.  However, as asserted by defendants, the United States Supreme Court has already determined that the failure to promote, regardless of how many times a promotion is sought, constitutes a "discrete act" and not a

---

[42] 491 U.S. at 185.
[43] Police Ass'n. of New Orleans Through Cannatella v. City of New Orleans, 100 F.3d 1159 (5th Cir. 1996) (internal citations omitted).
[44] 100 F.3d at 1171.
[45] R. 22 at ¶¶ 13, 14; R. 43-1 at p. 20.
[46] R. 22 at ¶ 14.

continuing violation.[47]   Under the Supreme Court's reasoning, then, each alleged denial of promotion to Superintendent constitutes its own cause of action under Section 1981 and is subject to its own distinct one-year prescriptive period.[48]

Plaintiff's suit was filed on September 25, 2009.[49]  Accordingly, any denial of promotion claim accruing before September 25, 2008 is prescribed.  To the extent that plaintiff alleges a specific instance where he was denied promotion to Superintendent between September 25th through October 6th, the date he was fired, such claim would survive.  Our review of plaintiff's complaint shows a fairly detailed narrative concerning the dates September 29, 2008 and October 6, 2008.  Plaintiff's complaint does not allege that he spoke to any of the defendants and requested promotion during that time.

While plaintiff's reference to denials of promotion after July of 2007 suffices under the notice pleading requirements, such vague reference does not fulfill plaintiff's burden of proof as a party opposing summary judgment in this case.[50]  As cited above, plaintiff may not rely on the allegations of the pleading and must make specific factual allegations which, if proven true, would entitle him to relief on his failure to promote claims.

Accordingly, the court finds that plaintiff presents inadequate evidence to enable this court to deny summary judgment on the issue of prescription.  Therefore, this court will grant defendants' motion for summary judgment insofar as it requests summary judgment declaring that plaintiff's failure to promote claims against all defendants are prescribed under 42 U.S.C. § 1981 and LSA-R.S. 23:303(D).  Such claims will be dismissed with prejudice.

**3.    Assuming no prescription of claims, has plaintiff demonstrated a prima facie case of discriminatory failure to promote?**

---

[47] National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).
[48] Id.
[49] R. 1.
[50] R. 22 at ¶ 14.

9

**4.**   **Plaintiff's proof of racial discrimination**

**5.**   **Assuming plaintiff is able to demonstrate a prima facie case of discriminatory failure to promote, defendants can show a legitimate, non-discriminatory reason for their decision not to promote plaintiff.**

The court addresses these three arguments together based upon our finding that they are interrelated in such a way that necessitates joint consideration.

Defendants first assert that, even in the absence of the prescription of plaintiff's failure to promote claims, such claims still fail for want of a prima facie case.  Though we have, above, determined that such claims are prescribed under applicable law, we address this hypothetical argument out of an abundance of caution.

A plaintiff alleging discriminatory failure to promote under Section 1981 must demonstrate that:

1.   he was a member of a protected class;
2.   he was qualified for the position sought;
3.   his request for promotion was rejected; and
4.   his employer continued seeking applicants or promoted an individual outside the protected class possessing fewer qualifications for the position.[51]

Defendants assert that plaintiff is unable to demonstrate the fourth element of a prima facie case as to these claims because the Superintendent position was never filled and was, instead, eliminated.  Plaintiff denies this, alleging that Charles Brossette ("Brossette"), a white male, was given the responsibilities of Superintendent and a pay raise.[52]  Plaintiff alleges that this is an adequate showing under the fourth element of his prima facie case.   Plaintiff cites no evidence in support of this assertion.  Defendants cite the deposition testimony of Wimberly, in which he stated that, as far as he knew, Brossette received no pay increase after the

---

[51] Celestine v. Petroleos de Venezuella S.A., 266 F.3d 343 (5th Cir. 2001); Blow v. City of San Antonio, 236 F.3d 293 (5th Cir. 2001); Haynes v. Pennzoil Co., 207 F.3d 296 (5th Cir. 2000).
[52] R. 50-1 at p. 9.

Superintendent position at issue was combined with Brossette's existing responsibilities as Superintendent of Electrical Distribution.[53]

Here, plaintiff presents no evidence, beyond his own unsubstantiated assertion, that Brossette received a pay increase upon assuming the responsibilities of the Superintendent in addition to his existing responsibilities.  As we have expressed above, plaintiff's burden is not met without specific factual allegations and citation to summary judgment evidence. Accordingly, the court finds no basis to conclude that plaintiff is able to fulfill his burden of proof with respect to the fourth element.

Defendants next assert that plaintiff offers no direct evidence of racial discrimination in this case.  Despite plaintiff's denial of this assertion, the court finds no direct evidence of discrimination has been offered in this matter.  Plaintiff cites his own affidavit at paragraphs 29, 30, 31, 32 and 40 as direct evidence of discrimination.  The court has carefully reviewed plaintiff's affidavit and finds that these paragraphs present no direct evidence of discrimination.

Paragraph 29 recounts an exchange between plaintiff and Wimberly in which plaintiff alleges that Wimberly stated, "I don't care if you have 'God' on your hat, you will never be Superintendent of Power Production."[54]  Similarly, paragraph 29 also alleges that unspecified defendants stated that plaintiff could "play ball with us or you don't play ball at all.  You can sit on the bench."[55]

Taking both of these statements as true for the purpose of this motion, these are not direct evidence of racial discrimination.  Each of these statements requires further inference in order to constitute proof of racial animus.

---

[53] R. 43-1 at p. 22 citing Deposition of Wimberly [R. 43-9] at 96:9-11; Deposition of Brossette [R. 43-15] at pp. 14-15.
[54] R. 51-2 at ¶ 29.
[55] Id.

11

Thus, under the burden shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>,[56] applicable to this matter, plaintiff is required to establish a prima facie case of discriminatory failure to promote in order to advance his claim.

Under <u>McDonnell Douglas</u>, if we assume that plaintiff has successfully demonstrated a prima facie case of discriminatory failure to promote, though we expressly found above that plaintiff has not made such a showing, the burden then shifts to defendants to articulate a legitimate, non-discriminatory reason for its decision not to promote plaintiff.[57] Again, we need not consider this hypothetical argument, but do so out of an abundance of caution.

Defendants assert that the Mayor made the decision to eliminate the Superintendent position based on a desire to save money and make the Electrical Department more efficient. The Mayor testified that he felt that the power plant's transition to stand-by provider and Possoit's departure created an opportunity to reduce payroll costs by consolidating all Electrical Department supervisory roles.[58]

The court agrees that the elimination of a position for economic reasons is a valid, non-discriminatory reason for defendants' failure to promote plaintiff. As cited by defendants, the Fifth Circuit has addressed this issue in <u>Adams v. Groesbeck Independent School District</u>.[59] In that case, the court found that plaintiff failed to present a prima facie case because the position he sought was not available. Importantly, the court notes the difference between proof that a position is vacant and proof that it is available. There, as in the case before this court, though the position at issue was vacant, a decision was made not to fill it.

---

[56] 411 U.S. 792 (1973).
[57] 411 U.S. at 802-03.
[58] R. 43-1 at p. 25.
[59] 475 F.3d 688 (5th Cir. 2007).

In the instant case, it is undisputed that the City did not post the vacancy, solicit or accept applications for the job of Superintendent.[60]  Though plaintiff alleges that the Superintendent job was filled when the responsibilities of that job were transferred to Brossette, this theory is unsupported by any evidence.

Considering these three issues as a whole, the court finds that plaintiff fails to present a prima facie case of discriminatory failure to promote because plaintiff fails to present evidence that the position sought was available or was ever filled.  Moreover, we find that, had plaintiff presented a prima facie case, defendants have successfully borne the burden of articulating a legitimate, non-discriminatory reason for their decision not to promote plaintiff.

### 6.      Plaintiff's showing of pretext under <u>McDonnell Douglas</u>

Within the McDonnell Douglas framework, once defendants articulate a legitimate, non-discriminatory reason for its failure to promote plaintiff, the burden again shifts to the plaintiff to demonstrate the reason offered by defendants is merely pretext for impermissible discrimination.[61]

Defendants' motion next argues that, assuming the foregoing analysis, plaintiff is unable to demonstrate pretext under the <u>McDonnell Douglas</u> burden-shifting framework.  Plaintiff asserts that he does offer evidence of pretext, citing his Statement of Controverted Facts at paragraphs 84 – 86.[62]  The court has examined the cited paragraphs and finds that they offer no evidence of pretext, instead these paragraphs center on factual allegations concerning Wimberly's role with the City.

---

[60] R. 50-2 at ¶ 85.
[61] <u>McDonnell Douglas</u>, 411 U.S. at 804-05; <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 350 (5th Cir. 2005) (internal citations omitted).
[62] R. 50-1 at p. 9.

Accordingly, if the court were to assume that plaintiff advanced his case to this point in the McDonnell Douglas framework, we would find that plaintiff has presented no evidence of pretext to rebut defendants' legitimate, non-discriminatory reason for not promoting plaintiff to Superintendent.

### 7. Plaintiff's prima facie case of discriminatory transfer

In order to demonstrate a prima facie case of discriminatory transfer under 42 U.S.C. § 1981, plaintiff must demonstrate that:

1. he was a member of a protected group;
2. he was qualified for the position he held;
3. he was transferred from the position at issue; and
4. his employer replaced him with a similarly-situated employee outside of the protected group.[63]

Defendants assert that plaintiff is unable to demonstrate the fourth element of a prima facie case because he has no evidence that the City hired anyone to assume his former job as Chief Operator.  Defendants also assert that plaintiff's own testimony verifies that he has no knowledge of anyone being hired to replace him as Chief Operator.[64]

Plaintiff argues that other former plant employees were called back to work after he was transferred and that these persons served as "operators."[65]  Plaintiff points out that several of these employees were Caucasian.[66]  Plaintiff further argues that his transfer was based on boiler performance issues over which he had no control and, therefore, should not be considered a legitimate basis for his transfer.[67]

---

[63] Pegram v. Honeywell, Inc., 361 F.3d 272 (5th Cir. 2004) (internal citations omitted).
[64] Deposition of Hymes [R. 43-3] at 55:23 – 56:15.
[65] R. 50-1 at p. 10.
[66] Id.
[67] Id.

14

The court has reviewed the testimony cited by defendants and agrees that plaintiff does deny that the City hired anyone to replace him as Chief Operator.  We find that, taking as true for these purposes plaintiff's allegations regarding rehiring of former employees to work as "operators" within the plant, such evidence is insufficient to establish that an employee outside the protected class was hired to replace him as Chief Operator.  Plaintiff's allegations regarding the legitimacy of the stated cause for his transfer are addressed below.

### 8.   Defendants' proffer of legitimate, non-discriminatory reason for transfer and plaintiff's evidence of pretext

Defendants next assert that, if this court assumes that plaintiff established a prima facie case of discriminatory transfer, defendants are able to meet their burden of articulating a legitimate, non-discriminatory reason for the transfer.  Defendants allege that plaintiff's transfer was based on his poor job performance during the CLECO capacity test, at which the power plant failed to demonstrate adequate capacity, resulting in a loss of money to the City. Defendants cite plaintiff's own testimony, wherein plaintiff verifies that the Mayor explained that his performance during the capacity test was the reason for his transfer, as evidence in support of this argument.[68]

Plaintiff denies that he performed poorly during the capacity test and alleges that the failure of the plant to demonstrate adequate capacity was caused by circumstances beyond his control.  Plaintiff also alleges that he filed a grievance concerning defendants' explanation for his transfer, but such grievance was not heard and that this deprivation of due process is proof that defendants' proffered reason for his transfer is merely pretext.[69]

---

[68] R. 43-1 at pp. 31-32.
[69] R. 50-1 at pp. 10-11.

As argued by defendants, inadequate job performance does constitute a legitimate reason for the transfer at issue under applicable jurisprudence.[70]  Thus, the court agrees that defendants have successfully met their burden of articulating a legitimate, non-discriminatory reason for plaintiff's transfer.

Conversely, the court finds that plaintiff has demonstrated no evidence of pretext. Plaintiff's only salient allegation is that he was transferred away from his prior position because two Caucasian men, Brossette and Wimberly, were in charge.[71]  Plaintiff's own conviction that defendants transferred him from his prior position because of his race is not competent summary judgment evidence and is insufficient to bear his burden of proof as to pretext.[72]  Moreover, plaintiff's assertion that he was not to blame for the power plant's poor performance during the capacity test is not evidence that his employer did not believe he was at fault in that incident.[73] Accordingly, were we to reach this stage in our analysis, plaintiff's unsubstantiated assertions would fail as a matter of law.

**9.      Plaintiff's prima facie case of discriminatory discharge**

In order to demonstrate a prima facie case of discriminatory discharge under § 1981, plaintiff must show that:

1.      he belongs to a protected class;
2.      he was qualified for the position which he held;
3.      he was discharged; and
4.      he replaced by someone outside the protected class or was otherwise discharged because of race.[74]

---

[70] Keelan v. Majesco Software, Inc., 407 F.3d 332, 345-46 (5th Cir. 2005); Valdez v. San Antonio Chamber of Commerce, 974 F.2d 592, 596 (5th Cir. 1992).
[71] R. 50-1 at p. 11.
[72] Elliott v. Group Medical & Surgical Services, 714 F.2d 93 (5th Cir. 1991).
[73] Little v. Republic Refining Co., 924 F.2d 93 (5th Cir. 1991) (truth of whether or not plaintiff's job performance was his own fault was not probative as to whether or not plaintiff's employer believed plaintiff to be at fault and based the employment decision at issue on such belief).
[74] Pegram, 361 F.3d at 281 (5th Cir. 2004).

Defendants assert that plaintiff is unable to meet the fourth element of a prima facie case because he cannot prove that he was replaced. Defendants cite plaintiff's testimony confirming that the City did not hire a new Chief Operator after his termination.[75] Defendants further assert that plaintiff's own testimony shows that he can offer no evidence that he was otherwise terminated because of his race.[76]

Plaintiff disputes defendants' characterization of his testimony and insists that his affidavit sets forth evidence that he was discharged because of his race. Plaintiff refers the court specifically to paragraphs 5, 28, 29 and 30 of the affidavit.[77] Paragraph 5 asserts that the power plant operated "at least 4 times; not once or twice."[78] Paragraph 28 states that plaintiff believes he was the victim of race discrimination.[79] Paragraph 29 lists nine examples of what plaintiff alleges to be discriminatory acts:

(a)  allowing me to perform the duties of the former Superintendent of Power Production (who was white) without job title, formal promotion or increase in pay;

(b)  treating me differently than white employees with obvious disrespect and total disregard in connection regarding not complying with policy in filling the vacancy;

(c)  treating Ms. Sylvia Morrow (who is also black) with disrespect for inquiring about and suggesting I be given an opportunity to be promoted;

(d)  chiding me when the [M]ayor called upon me "as Power Plant Superintendent" to comment upon an event for which I was presented a plaque (and referring to the [M]ayor's action as a "Freudian slip");

(e)  re-presenting the plaque on another day so one of the defendants (who is white) would be included

---

[75] Deposition of Hymes [R. 43-3] at 55:23-25 – 56:1-15.
[76] Id. at 205:22-25 - 206:1-10.
[77] R. 50-1 at p. 12.
[78] R. 51-2 at p. 2.
[79] Id. at p. 5.

17

| | although he had not actually participated in the power plant's operation during the event; |
|---|---|
| (f) | humiliating me in the presence of others with regard to a label on my hard hat that read, "Superintendent of Power Production," by angrily stating, "I don't care if you have 'God' on your hate, you will never be Superintendent of Power Production[;]" |
| (g) | intimidating and threatening me for having spoken with Ms. Morrow about their not complying with the policy regarding the vacancy stating: "you play ball with us or you don't play ball at all. You can sit on the bench[;]" |
| (h) | not saying anything to me about the alleged division of responsibilities between Mr. Wimberly and Mr. Brossette until 2007 and permitting me to believe there was still a vacancy and position I could apply for and be promoted to; and |
| (i) | permitting a white employee to curse me.[80] |

The court has carefully reviewed these allegations. Sub-paragraphs (b) and (i) are vague and do not present the kind of specific factual allegations upon which a rational trier of fact could base a finding of discrimination. Sub-paragraphs (a), (d), (e), (f), (g) and (h) do not, even when taken as true for the purposes of this motion, demonstrate racial discrimination as alleged. For example, sub-paragraph (h) asserts that plaintiff was not informed that the position he sought was not available, even though it was vacant. This sub-paragraph does not even allege that others were so informed or that the reason he was not informed was his race. Sub-paragraph (c) vaguely alleges disparate treatment of another employee, which has no bearing on plaintiff's discriminatory discharge claim. Taken together, these vague allegations do not present evidence that plaintiff was discharged because of his race. Paragraphs 5 and 28 are similarly not evidence of racial discrimination. Paragraph 30 is also a vague allegation which states that Wimberly, Lee and the Mayor "act differently when they speak to or encounter" black employees "by assuming an attitude of superiority and being more patronizing to them."[81] The court does not find that

---

[80] Id. at p. 5.
[81] R. 51-2 at p. 5.

this vague allegation constitutes competent summary judgment evidence of race as the reason for plaintiff's discharge from employment.

Additionally, the court agrees that plaintiff points to no evidence demonstrating that the City hired a new Chief Operator after discharging him. We therefore find that plaintiff fails to present evidence sufficient to establish a prima facie case of discriminatory discharge against defendants.

10. **Defendants' proffer of legitimate, non-discriminatory reason for plaintiff's discharge and plaintiff's evidence of pretext**

Defendants assert that, even if the court were to assume that plaintiff could demonstrate the requisite prima facie case of discriminatory discharge, plaintiff was discharged because he failed to report to work for three (3) consecutive days without notifying his supervisor, which constituted a violation of the City's personnel policy. Defendants cite the City's personnel handbook, which states, in part,

> [w]hen you call to give notice of an unexpected absence or late arrival, ask for your supervisor directly...If your supervisor is not available when you call, you may leave the information with the department secretary or another supervisor.

> Absence for work for three (3) consecutive work days without notifying your supervisor or his/her supervisor will be considered a voluntary resignation.[82]

As cited above, poor job performance, whether objectively true or subjectively believed by employer at the time, constitutes a legitimate, non-discriminatory reason for discharge of an employee. Thus, we find defendants have successfully met the burden which we hypothetically suppose was shifted to them under the assumption that plaintiff demonstrated a prima facie case of discriminatory discharge.

---

[82] R. 43-8 at p. 16 (Excerpt of City's Personnel Policies Manual, Bates No. 00295).

Plaintiff offers the testimony of Mr. Bob Hayward ("Hayward"), Supervisor of Maintenance, as evidence that defendants' proffered legitimate reason for his discharge is pretext for racial discrimination.   Hayward testified that, as Timekeeper, he was responsible for receiving and filing doctor's excuses for power plant employees who were out on sick leave.[83] Plaintiff points out that Hayward also testified that he was unaware of any requirement that plaintiff notify someone other than him of his sick leave.[84]

While Hayward's testimony asserting the propriety of plaintiff's actions, when taken as true over the contradictory testimony of two of plaintiff's power plant co-workers,[85] may create a question of fact as to whether or not plaintiff's actions in reporting sick leave to Hayward were contrary to a de facto City policy, it does not demonstrate racial discrimination.  As argued by defendants and expressed above, the important issue is whether or not plaintiff was discharged due to his race, not whether or not the legitimate, non-discriminatory reason proffered by defendants is ultimately proven to be correct under applicable law or policy.

Accordingly, the court does not find that plaintiff has successfully demonstrated that defendants' proffered reason for his discharge from employment is pretextual.

**11.    Plaintiff's federal and state retaliatory discharge claims**

Whether brought under the First Amendment to the U.S. Constitution or Article 1, § 7 of the Louisiana Constitution, a plaintiff alleging retaliation for the exercise of free speech must establish the following prima facie elements:

1.    that he suffered an adverse employment action;
2.    that he spoke as a citizen on a matter of public concern;

---

[83] Deposition of Hayward [R. 51-2] at 30:10 – 31:12.
[84] R. 50-1 at p. 13; R. 51-2 at 48:12 – 21.
[85] R. 43-1 at pp. 34-35.

3.   that plaintiff's interest in free speech outweighed the employer's interest in efficiency of public services; and

4.   that plaintiff's speech motivated or precipitated the adverse employment action.[86]

Defendants assert that plaintiff is unable to establish the second, third and fourth elements of a prima facie case of retaliatory transfer or discharge under the federal or state constitutions.

Plaintiff's second amended complaint alleges that defendants retaliated against him for speaking out concerning "racial discrimination in employment...and malfeasance in an area requiring a safe and efficient working environment and operation."[87]   Plaintiff alleges that these issues constitute matters of public concern and that his speech on these matters is protected by the First Amendment and the Louisiana Constitution.

A public employee is entitled to the free exercise of speech as to matters of public concern and may only be restricted in that freedom insofar as restriction is necessary to the employer's efficient and effective operation.[88]   In determining whether or not the speech at issue invokes the protections of the First Amendment, the court will first determine whether or not the plaintiff spoke in his role as a citizen or in his role as a public employee.[89]   The First Amendment does not extend protection to speech undertaken in the context of a plaintiff's role as a public employee.   The relevant inquiry is whether or not the plaintiff spoke as part of his official duties.[90]

While the airing of plaintiff's grievances to an outside authority may constitute citizen speech, rather than employee speech, plaintiff alleges that he raised his concerns to the City Council, the governing body of his employer.[91]   Such complaints relate to airing grievances up

---

[86] Davis v. Allen Parish Service Dist., 210 Fed. Appx. 404, 413 (5th Cir. 2006).

[87] R. 22 at ¶ 26.

[88] Garcetti v. Ceballos, 547 U.S. 410, 419 (5th Cir. 2006); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).

[89] Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008).

[90] Id. at 312-313.

[91]   .

the chain of command and are said to relate to plaintiff's job duties.[92]   Accordingly, we find that plaintiff was not speaking as a citizen when he allegedly complained about the City's employment practices to various City Council members.

While we are not bound to consider the second issue regarding First Amendment protection since we have above concluded that plaintiff spoke as a citizen, we do so out of an abundance of caution.  Our next inquiry is whether or not the speech concerns a matter of public concern.  Plaintiff testified that he spoke to Councilwoman Sylvia Morrow ("Morrow") and to Councilman Robert Jackson ("Jackson") only about his quest for promotion and increased pay in the wake of Possiot's retirement.[93]   Plaintiff testified that he did not allege racial discrimination to either council member.[94]

Speech pertaining to individual employment disputes and conditions of employment does not ordinarily constitute a matter of public concern.[95]   When taken as true for the purposes of this motion, plaintiff's testimony alleges complaints to council members concerning only private employment matters, rather than matters of public concern.   Accordingly, were we to find that plaintiff's speech was undertaken as a citizen, rather than a public employee, his federal and state retaliatory discharge claims would still fail because his own testimony reflects that the speech at issue did not concern a matter of public opinion under applicable jurisprudence.

## 12.    "All Other Claims"

Defendants' motion addresses the remainder of plaintiff's numerous claims, including, but not limited to plaintiff's equal protection, whistleblower and conspiracy claims.  Plaintiff

---

[92] Davis, 518 F.3d at 313.
[93] R. 43-4 at 112 – 113.   The court notes that, to the extent that plaintiff's recent affidavit contradicts his prior testimony, the court will not permit the affidavit to manufacture a material fact issue.  Doe ex rel. Doe v. Dallas Independent School Dist., 220 F.3d 380 (5th Cir. 2000).
[94] Id. at 113:10-13.
[95] Connick v. Myers, 461 U.S. 138 (1983); Burge v. Pearl River County, Miss., 103 Fed. App'x. 823 (5th Cir. 2004); Branton v. City of Dallas, 272 F.3d 730, 739 (5th Cir. 2001).

presents no argument or evidence whatsoever in opposition to defendants' motion, stating, in part:

> [p]laintiff respectfully submits that with respect to all other claims about which defendant has raised questions, there has been sufficient evidence presented to create genuine issues of material fact that preclude the grant of summary judgment to defendants.[96]

As stated above, a plaintiff met with a motion for summary judgment must respond to the motion with more than conclusory allegations and is required by applicable law and jurisprudence to cite particular facts and authority in opposition thereto.[97] The vast majority of the arguments advanced by defendants have been met with only vague assertions of disputed material facts, unaccompanied by even a single citation to jurisprudence or even assorted "exhibits" filed with plaintiff's woefully non-descript opposition. This court takes very seriously its role with respect to motions filed before it and always endeavors to carefully inspect the law and arguments at issue, but will not construct plaintiff's suit for him by inferring opposing arguments not advanced.[98]

On the basis of the lack of opposition to the remainder of defendants' motion and the court's finding that defendants' arguments are correct under applicable law, it is the court's finding that summary judgment is appropriate as to the rest of plaintiff's claims.

**Alexandria, Louisiana**
**July 30 , 2012**

_____
**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[96] R. 50-1 at p. 14.
[97] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).
[98] While this court is generally bound to address the affirmative defense of qualified immunity, as pled by defendants in this matter, when the court finds no evidence of constitutional harm, no further immunity analysis is warranted. Rochon v. City of Angola, La., 122 F.3d 319, 320 (5th Cir. 1997) citing Quives v. Campbell, 934 F.2d 668 (5th Cir. 1991).